**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                              |   |                        |
|------------------------------|---|------------------------|
| **JO ANN BURGESS,**          | * |                        |
| **Plaintiff,**               | * |                        |
| v.                           | * | Case No.: PWG-19-123   |
| **UNITED STATES OF AMERICA,**| * |                        |
| **Defendant.**               | * |                        |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jo Ann Burgess filed suit against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* She alleged that she was injured while walking on the sidewalk at the Patuxent River Naval Air Station when she was struck by a loose fire hose and nozzle, which was dragging behind a fire truck, Engine 134, owned by the United States Department of Defense. Compl. 2, ECF No. 1. Plaintiff alleges negligence on the part of the Department of the Navy employees for failure to properly secure the hose and for allowing the hose to come loose and drag behind the fire truck. Compl. 3. Plaintiff alleges, and the Government does not here contest, that Plaintiff complied with the terms of the FTCA, 28 U.S.C. § 2675, by first filing a claim with the Office of the Judge Advocate General.[1] Compl. 2. The Government has moved to dismiss for lack of subject matter jurisdiction on the basis that the employees' actions

---

[1] According to Plaintiff, no action has been taken by the agency on her claim. Thus, Plaintiff contends, and the Government does not here contest, that the claim has been denied. *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section.").

fall under the discretionary function exception of the FTCA, 28 U.S.C § 2680(a), and consequently, Plaintiff's claims are barred by sovereign immunity. Def.'s Mot. Mem. 1-2, ECF No. 27-1. However, because the Plaintiff has adequately alleged that the negligent conduct of the Government employees was not the byproduct of a discretionary policy judgment, I will deny the Government's motion to dismiss. The parties fully briefed the motion (ECF Nos. 27, 33, 38), and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a plaintiff's complaint due to lack of subject matter jurisdiction, asserting, in effect, that the plaintiff lacks any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). "Jurisdiction of the lower federal courts is . . . limited to those subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Because subject matter jurisdiction involves the court's power to hear a case, it cannot be waived or forfeited, and courts have an independent obligation to ensure that subject matter jurisdiction exists. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The burden of establishing subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The district court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

A defendant may challenge the district court's subject matter jurisdiction in two ways. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may raise a facial challenge, alleging "that a complaint simply fails to allege facts upon which subject matter

jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under such a challenge, the court takes the complaint's allegations as true. *Kerns*, 585 F.3d at 192. Alternatively, a defendant may raise a factual challenge, asserting that the jurisdictional allegations in the complaint are untrue. *See id.* In that case, the court may consider evidence outside of the pleadings without converting the motion to one for summary judgment. *Id.*

The Government does not state in its motion whether it brings a facial or factual challenge. However, I will construe the motion as a facial challenge, because the Government is essentially arguing that the discretionary function exception precludes jurisdiction even on the facts set forth in Plaintiff's complaint. Accordingly, I will take the facts alleged in the complaint as true and deny the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Kerns*, 585 F.3d at 192.

## Discussion

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584 (1941); *see also Kerns*, 585 F.3d at 193-94 ("Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit."). In the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees" within the scope of their employment. *Kerns*, 585 F.3d at 194 (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)). "The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).

However, the FTCA lists several exceptions, under which the United States does not waive its sovereign immunity and consent to be sued. 28 U.S.C. § 2680. One of these is the discretionary function exception, which exempts from the waiver of sovereign immunity

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). With this exception, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). If the discretionary function exception applies, the United States has not waived sovereign immunity, and the court lacks subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 304-05 (4th Cir. 1995).

Courts undertake a two-tier analysis in order to determine whether the discretionary function exception applies. First, the Court must consider "whether the governmental action complained of involves an element of judgment or choice." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993) (internal quotation marks omitted) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Piechowicz v. United States*, 885 F.2d 1207, 1211 (4th Cir. 1989)). As the Fourth Circuit has instructed,

> [t]he inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action. If such a mandatory statute, regulation, or policy applies, then the conduct involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary. In that case the government actor "has no rightful option but to adhere to the directive," and if the plaintiff can show that the actor in fact failed to so adhere to a mandatory standard, then the claim does not fall within the discretionary function exception.

*Baum*, 986 F.2d at 720 (quoting *Berkovitz*, 486 U.S. at 530).

Second, if no such mandatory rule exists and the government must exercise its choice or judgment, the Court "ask[s] whether the choice or judgment involved is one based on considerations of public policy." *Id.* (internal quotation marks omitted) (citing *Berkovitz*, 486 U.S. at 531; *Gaubert*, 499 U.S. at 323-24). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 324-25; *see also Baum*, 986 F.2d at 720-21 (4th Cir. 1993) (eschewing a "fact-based inquiry" in favor of an examination of the objective and general nature of the type of decision in question). Notably, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7; *see also Totten v. United States*, 806 F.2d 698, 700 (6th Cir. 1986) (citing *Dalehite v. United States*, 346 U.S. 15, 27-28 (1953)) (drawing a distinction between torts committed in the course of routine activities, such as operation of a motor vehicle, and "those associated with activities of a more obviously governmental nature"). The core inquiry is whether the decision in question is one inherently expected to be grounded in policy considerations. *Baum*, 986 F.2d 720-21.

In the instant motion, the Government contends that the conduct at issue is discretionary and rooted in public policy considerations. Def.'s Mot. Mem. 2. More specifically, the Government argues that the first prong of the *Berkovitz-Gaubert* analysis is met because the alleged conduct is not governed by any mandatory federal directives, since the Department of the Navy regulations leave the exact method of adequately securing a fire hose on a moving vehicle up to the discretion of the firefighters, so long as there is a "positive means to prevent unintentional

5

deployment." Def.'s Mot. Mem. 13-14. As to the second prong, the Government claims that the decision to place Engine 134 in service despite its lack of a hose bed cover falls under the discretionary function exception, because safety, readiness, and allocation of limited resources on a military base are "enmeshed in policy considerations." Def.'s Mot. Mem. 14-17. The Government argues that the "conduct in issue is the decision to place Engine 134 in service." *Id.* at 14; *see also* Reply 1-2, ECF No. 38.

On the other hand, Plaintiff maintains that the conduct in question was the failure to secure the fire hose. Pl.'s Resp. Mem. 10, ECF No. 33-1. Plaintiff argues that this failure was not the byproduct of any discretionary judgment, but rather the result of the firefighters on the truck at the time either failing to adhere to an established standard or failing to use due care to secure the hose adequately. *Id.* Consequently, Plaintiff says, the discretionary function exception does not apply, because the Defendant's policy discretion in choosing to place Engine 134 in service does not relieve the Defendant from the obligation to ensure that the fire hose is adequately secured when the vehicle is in use. *Id.* at 10-11. Finally, Plaintiff suggests that the core issue of negligence of Navy employees ought to be left to the finder of fact. Pl.'s Resp. Mem. 13.

"Before a court can apply the two-part test to determine whether the discretionary function exception applies, the court must first identify the 'conduct at issue.'" *Krey v. Brennan*, Civil Action No. DKC 15-3800, 2017 WL 2797491, at *4 (D. Md. June 28, 2017) (quoting *Bell v. United States*, 238 F.3d 419 (6th Cir. 2000)). Certainly, the Government is correct that its choice to place Engine 134 in service without the typical hose bed cover while another truck was undergoing repairs is a matter of discretion, as it pertains to "a question of how to allocate limited resources among competing needs." *Baum*, 986 F.2d at 722. *See also Smith v. United States*, 251 F. Supp. 2d 1255, 1259-61 (D. Md. 2003) (Coast Guard's choice of when and how to repair a navigational

6

aid was based on considerations of public policy, because it "[took] into account the question of how to allocate resources among competing needs"); *Claypool v. United States*, 103 F. Supp. 2d 899, 908 (S.D.W.V. 2000) (National Park Service's decision not to maintain roadside terrain was policy-based, because the decision was made considering allocation of NPS's limited resources). However, as Plaintiff points out in her response, the decision to place Engine 134 into service is not being challenged. Pl.'s Resp. Mem. 13. Rather, Plaintiff's claim centers around the alleged failure to properly secure the hose such that it would not drag behind the fire truck and cause injury to nearby individuals. Compl. 3; Pl.'s Resp. Mem. 10.

The Government asserts that this conduct is necessarily encompassed within the decision to put the fire truck in service, citing *Wood v. United States*, in which the Fourth Circuit found that the Navy's initial decision of whether to allow the use of its facilities, which was discretionary, encompassed several additional decisions informed by the same policy considerations, such that a decision to not place a particular warning sign was too narrow to be the conduct at issue. 845 F.3d 123, 131 (4th Cir. 2017). However, the circumstances here can be distinguished from the premises-liability type cases such as *Wood* or *Krey*. For example, in *Krey*, although there was a maintenance handbook that contained safety provisions at the post office during wet weather conditions, there were no mandated safety procedures. 2017 WL 2797491, at *4. Similarly, in *Wood*, the parties agreed that there was no mandate related to maintenance, inspection, or warnings at the facility. 845 F.3d at 129. Here, as discussed below, the requirement to use a positive means to secure the fire hose was mandated, regardless whether the fire truck was in regular use or selected for emergency service. Therefore, the "failure to adequately secure the fire hose" is not simply a "garden variety" "premises liability" claim as the Government describes. Reply 2. The fact that the unsecured hose was emanating from Engine 134—as opposed to any other vehicle

7

that the Government could have selected to put into service—is of no import when considering whether the discretionary function exception applies to the conduct at issue.

Moving to the first prong of the *Berkovitz-Gaubert* analysis, Navy directives indicate that a hose restraint system must be used on all fire trucks, including a "positive means to prevent unintentional deployment of the hose from the top, sides, front, and rear of the hose storage area" while the fire truck is in use. Def.'s Mot. Mem. 5 (quoting Section 15.10.7 of NFPA 1901). The Government contends, and the Plaintiff concedes, that these directives do not mandate any one specific method of securing a fire hose. Def.'s Mot. Mem. 13 ("The provision does not prescribe a specific method of hose restraint nor mandate a particular type of restraint over another."); Pl.'s Resp. Mem. 13 ("[T]here is more than one way to secure a fire hose."). Nevertheless, the regulations do unequivocally mandate that some sort of hose restraint system be in use on each fire truck at all times. *See* Def.'s Ex. 2, ECF No. 27-3, OPNAV Instruction 11320.23G at Ch. 3, 5.e ("All structural fire apparatus shall be equipped with hose restraint systems. A hose restraint system shall be used on all in-service F&ES vehicles.") Thus, the Government employee had no discretion in determining whether the hose would be secured, only discretion in how to secure it. Consequently, "if the plaintiff can show that the actor in fact failed to so adhere to a mandatory standard, then the claim does not fall within the discretionary function exception." *Baum*, 986 F.2d at 720 (quoting *Berkovitz*, 486 U.S. at 530). The Plaintiff alleges that the Government employee negligently failed to adhere to the rule requiring the firefighters to adequately secure the hose such that it would not unintentionally deploy and drag behind the truck. Compl. 3. This material fact is in dispute, making dismissal inappropriate. *Balfour Beatty*, 855 F.3d at 251. Whether or not Plaintiff can prove that the firefighters on the truck at the time of the Plaintiff's

injury did in fact fail to employ some sort of compliant hose restraint system is best left to the finder of fact.

Even if the Navy regulations were not a mandate to employ a fire hose restraint system, the Government's motion to dismiss also would fail on the second prong of the *Berkovitz-Gaubert* analysis. As the Supreme Court noted in *Gaubert*, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 325 n.7. For example, if a government official drove an automobile on government business and "negligently collided with another car, the [discretionary function] exception would not apply." *Id.* Similarly, in the instant case, an unrestrained hose dragging behind a moving fire truck allegedly struck and injured Plaintiff as she walked down the sidewalk. When Congress conceived of the discretionary function exception to its broad waiver of civil tort immunity, it could not have intended to exempt such negligent conduct as driving down the road with an untethered fire hose thrashing about behind the vehicle. *See Varig Airlines*, 467 U.S. at 813 ("[T]he basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee . . . are of the nature and quality that Congress intended to shield from tort liability."). Such a decision is not "one which we would expect inherently to be grounded in considerations of policy," *Baum*, 986 F.2d at 721, nor is it even "susceptible to policy analysis." *Gaubert*, 499 U.S. at 324-25.

## Conclusion

Although Navy policy does not dictate a specific method for securing a fire hose, it does dictate that a positive hose restraint system is required on all fire trucks that are put in use. Thus, if the Plaintiff can show, as she alleges, that the firefighters on Engine 134 did not adhere to that

9

mandatory standard, then the claim does not fall within the discretionary function exception. *Baum*, 986 F.2d at 720. Further, though deciding to use one fire truck over another is within discretion of the government agency, the discretionary function exception does not excuse all tortious acts committed by the operators of any government vehicle that is in use. Some conduct, including the act or omission at issue here, is simply not "based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7. Therefore, I find that the claim in this case is not based on a discretionary function, and the Government has waived sovereign immunity under the FTCA. For these reasons, I will deny the Government's motion to dismiss for lack of subject matter jurisdiction.

## ORDER

Accordingly, it is, this 30th day of December, 2019, hereby ORDERED that:

1. Defendants' Motion to Dismiss, ECF No. 27, IS DENIED; and

2. The Government shall file its ANSWER to Plaintiff's Complaint by January 15, 2020.

/S/
Paul W. Grimm
United States District Judge